**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JAMES MONTGOMERY,** | : | **CIVIL ACTION** |
| **JACQUELINE MONTGOMERY** | : | |
| **Plaintiffs,** | : | |
| | : | |
| **vs.** | : | |
| | : | |
| **MITSUBISHI MOTORS CORP.,** | : | |
| **MITSUBISHI MOTOR SALES OF** | : | |
| **AMERICA, INC. and ANNE STORK** | : | |
| **Defendants.** | : | **NO. 04-3234** |


Gene E.K. Pratter, J.        Memorandum and Order        April 19, 2006

Defendants Mitsubishi Motors Corporation and Mitsubishi Motors North America, Inc.

(jointly, "Mitsubishi")[1] move for partial summary judgment in this product liability case.

Specifically, Mitsubishi's motion seeks to remove the claim for punitive damages from this case.

For the reasons that follow, the motion will be granted.

**FACTUAL BACKGROUND**

This action arises out of a fatal auto accident that occurred on July 23, 2002.  The

Plaintiffs' son, Garrett Montgomery, was a passenger in a MY2000 Mitsubishi Montero Sport

when the vehicle was struck by another vehicle driven by Third Party Defendant Anne Stork.

The Montero rolled over, and Garrett Montgomery was killed.

The Montgomerys filed this Complaint on July 8, 2004, alleging that Mitsubishi caused

---

[1]  Although the case is captioned against Mitsubishi Motors Corp. and Mitsubishi Motor
Sales of North America, Inc., the latter organization is now called Mitsubishi Motors North
America, Inc..  Answer to Complaint at 1.  The proper name of this defendant, Mitsubishi Motors
North America, Inc. shall be used throughout this memorandum.

their son's death by "the design and manufacture of a defective motor vehicle and because of Defendants' negligence, carelessness and reckless disregard for the safety of others." Complaint at ¶ 13.  The Plaintiffs seek compensatory and punitive damages.  Mitsubishi filed an answer to the Complaint on August 19, 2004, asserting various affirmative defenses.[2]  The parties conducted discovery, including taking the depositions of several expert witnesses, through January 16, 2006, and all discovery has been completed.  Mitsubishi moves for an order granting partial summary judgment against Plaintiffs' demand for punitive damages.  The Plaintiffs responded to the Motion, and oral argument on the Motion was held on April 5, 2006.

DISCUSSION

A.    Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).  An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A factual dispute is "material" if it might affect the outcome of the case under governing law.  Id.

_____A party seeking summary judgment always bears the initial responsibility for informing the district court of the basis for its motion and identifying those portions of the record that it

_____

[2] Without admitting any liability, Mitsubishi filed a Third Party Complaint against Anne W. Stork on August 24, 2004. In the Third Party Complaint, the Defendants/Third Party Plaintiffs allege that Ms. Stork negligently caused the accident and resulting injuries.  Ms. Stork has been served with and answered the Third Party Complaint.  The present motion does not involve Ms. Stork in any way, and Ms. Stork has not filed any papers with respect to it.

believes demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett,

477 U.S. 317, 322 (1986).  Where the non-moving party bears the burden of proof on a particular

issue at trial, the moving party's initial burden can be met simply by "pointing out to the district

court that there is an absence of evidence to support the non-moving party's case."  Id. at 325.

After the moving party has met its initial burden, "the adverse party's response, by affidavits or

as otherwise provided in this rule, must set forth specific facts showing that there is a genuine

issue for trial."  FED. R. CIV. P. 56(e).  Summary judgment is appropriate if the non-moving party

fails to rebut by making a factual showing "sufficient to establish the existence of an element

essential to that party's case, and on which that party will bear the burden of proof at trial."

Celotex, 477 U.S. at 322.  Under Rule 56, the Court must view the evidence presented on the

motion in the light most favorable to the opposing party.  Anderson, 477 U.S. at 255.

> B.     **Punitive Damages**

The Supreme Court of Pennsylvania has adopted Section 908(2) of the Restatement

(Second) of Torts with respect to awards for punitive damages.  Kirkbride v. Lisbon Contractors,

Inc., 555 A.2d 800, 803 (Pa. 1989).  Section 908(2) sets forth the following factors to evaluate

when considering the propriety of punitive damages: (1) the character of the act; (2) the nature

and extent of the harm; and (3) the wealth of the defendant.  For a court assessing whether an

award of punitive damages is appropriate, the focus is on the character of the act.

Under Pennsylvania law, an act giving rise to an award of punitive damages requires a

plaintiff to establish that the defendant has acted in "an outrageous fashion due to either 'the

defendant's evil motive or his reckless indifference to the rights of others.'"  Phillips v. Cricket

Lighters, 883 A.2d 439, 445 (Pa. 2005).  A defendant acts recklessly when his conduct creates an

unreasonable risk of physical harm to another and such risk is substantially greater than that which is necessary to make his conduct negligent. Id.; see also Wetzel v. Kmart Corp., No. 89-1344 at *2 (E.D. Pa. May 20, 1992) (noting that recklessness may be found where an actor "knows, or has reason to know . . .of facts which create a high degree of risk of physical harm to another, and deliberately proceeds to act or fails to do an act, in conscious disregard of, or indifference to, that risk"). A showing of mere negligence, or even gross negligence, is not enough to establish that punitive damages should be imposed. Cricket Lighters, 883 A.2d at 445. To successfully demonstrate a claim for punitive damages, a plaintiff must present evidence that establishes that a defendant's conduct amounted to "intentional, willful wanton or reckless conduct." Id.

In a products liability case, a court assessing the propriety of a claim for punitive damages must consider whether there is evidence that in designing, manufacturing or marketing a product, a defendant acted with reckless indifference of a risk of harm which is substantially greater than that which is necessary to make its conduct negligent. Id. Factors in considering the sufficiency of such evidence include whether the product was being utilized as intended and whether the product complied with safety standards. Id.

A company's serious consideration of financial concerns to determine whether to incorporate additional safety features does not, standing alone, constitute the requisite wanton conduct. Cricket Lighters, 883 A.2d at 447. In Cricket Lighters, a two-year old child retrieved a butane lighter that belonged to his mother and used it to ignite a fire in which he, his mother and a sibling were killed. Cricket Lighters, 883 A.2d at 442. Relatives of the victims sued the company that manufactured the lighter, arguing that the lighter was defectively designed because

it did not contain any child-proof safety features.  Id.[3]  Concluding that punitive damages were not appropriate, the court considered the above-stated factors and found that the defendant's decision not to incorporate child-proof features was not so outrageous as to cause the risk of harm to be substantially greater than that which would have been posed by negligent conduct.  Id. at 447.  In so finding, the Cricket Lighters court flatly rejected the plaintiff's argument that Cricket's weighing of financial concerns in determining whether to incorporate additional safety features into its product, standing alone, established wanton conduct.  Cricket Lighters at 447. The financial consideration, the court noted, simply showed that the defendants had considered "all of the myriad elements that affect decisions a for-profit entity must make in manufacturing and marketing commercial products."  Id.

Likewise, in Wetzel v. Kmart Corp., No. 89-1344, 1992 WL 136055 at * 2 (E.D. Pa. May 20, 1992), where a plaintiff suffered burns after the nightgown she was wearing was ignited by a cigarette, the court concluded that the manufacturer of the gown had not acted wantonly by failing to use flame retardant fabric to make the nightgown or by failing to affix labels warning the wearer that the fabric was not flame retardant.  A representative for the manufacturer had, in his deposition, stated that (1) he was unaware of activities of a consumer organization with respect to the flammability of adult sleepwear; (2) he did not study journals regarding the flammability of fabrics used in adult nightwear; (3) his professional responsibilities would have required him to have knowledge of the standards for flame resistant fabrics; (4) the company's sole concern with respect to adult sleepwear fabrics was that it comply with minimum federal

---

[3]  The plaintiffs' claims sounded in both strict liability and negligence.  Cricket, 883 A.2d at 442.

standards; (5) he knew of no other manufacturer of adult sleepwear that affixed tags advising about the flammability of the fabric; (6) on rare occasions, and at a customer's request, the company had manufactured adult sleepwear using a flammable resistant material; (7) at the time of the incident in question, the company had not designated a single individual to monitor the activity of the public interest groups lobbying for enhanced flammability standards for adult sleepwear; (8) at the time of the incident the manufacturer did not belong to any trade associations; and (9) the company did not test each and every fabric from which it manufactures adult sleepwear for flammability.  Wetzel, 1992 WL 136055 at * 3.  The Wetzel court concluded that none of these facts, either individually or in the aggregate, evidenced conduct that rose to the level of reckless disregard for the safety of the plaintiff.  Id.

Finally, in Olsen v. Ford, 521 F. Supp. 59 (E.D. Pa. 1981), the plaintiff was injured when the vehicle in which he was a passenger was involved in an accident and overturned.  Olsen, 521 F. Supp. at 62.  In the subsequent lawsuit, the plaintiff argued that the vehicle had been defectively designed and manufactured and was not crashworthy.  Id.  The court did not conduct a lengthy analysis of punitive damages, but did conclude that "the defendant's mere failure to conduct a particular test in addition to or instead of those tests it admittedly conducted could not, without more, rise to the level of outrageous conduct."  Id. at 70.

In opposing Mitsubishi's motion, the Montgomerys argue that: (1) Mitsubishi knew "either before or after the sale of the model year 2000 Montero that his model SUV had a high propensity to roll over"; (2) Mitsubishi knew that this model vehicle and others it has sold in the U.S. . . . had some of the highest risk of on-road rollover of any SUV sold and operated in the United States; (3) Mitsubishi knew that this model vehicle and its predecessor model had been

involved in numerous on-road rollovers which caused serious injuries and/or fatalities; (4)
Mitsubishi knew that in the event of a vehicle rollover there is a significantly higher risk of
serious injury or fatality; and (5) despite this knowledge, Mitsubishi failed to alter the Montero
Sport or to warn customers or conduct a limited recall or retrofit of the vehicle to reduce the risk
of on-road rollovers.  Plaintiffs' Response Opposing Summary Judgment at 11.  However, none
of these arguments is supported by citation to the record evidence in this case.  Indeed, the record
evidence presented does not support such findings.[4]

For example, of the expert reports prepared to assist the Plaintiffs' case, none of them
supports a reasonable conclusion that Mitsubishi acted in an outrageous or wanton manner in
designing the 2000 Montero Sport.  Robert Caldwell, who was hired to investigate and
reconstruct the accident, makes no statement in his report as to whether the Montero Sport was
defectively designed, but rather sets forth the detail with respect to how the accident took place.
Caldwell Report.  Paul Lewis, an expert who reviewed "the mechanism by which [Mr.
Montgomery] sustained fatal injuries," sets forth several opinions about the nature and cause of
Mr. Montgomery's injuries, but does not discuss any behavior by Mitsubishi or prior knowledge
relevant to this issue that Mitsubishi had and intentionally ignored.  Lewis Report at 25-31.
Shane Richardson, an engineering expert, states in his opinion that had the static stability factor
of the 2000 Montero Sport been increased, it would not have rolled over as a result of the
collision, but does not offer any opinion germane to the issue of outrageous or wanton conduct.

---

[4]  The Court acknowledges that there are presently motions pending in this case to
exclude the testimony of Messrs. Anderson, Lewis and Richardson.  For the purposes of
construing the pleadings and record in a light most favorable to the Plaintiffs (as the non-moving
party), the Court has considered the reports and testimony of these experts in assessing the
propriety of the demand for punitive damages.

Richardson Report at 14.  Finally, Robert Anderson, who opined about the stability and handling of the 2000 Montero Sport and of other vehicles, states that "[i]f the Mitsubishi Montero Sport had been made wider and lower, it would not have an overturn limit response and the Montgomery vehicle would not have overturned," and that "Mitsubishi did not design the Mitsubishi Montero Sport to withstand limit turning conditions and did not test the vehicle in the limit to confirm it passed a test like the fishhook or J-turn."  Anderson Report at ¶¶ 11, 12.  Although the Plaintiffs argue that these statements demonstrate a reckless indifference to safety by Mitsubishi, the Court does not agree that the alleged design flaw posited by Plaintiffs' experts rises to the level of outrageous conduct required under the criteria set forth in Cricket Lighters.[5]  At his deposition, Keiji Isoda, a representative for Mitsubishi, stated that when a vehicle is in the design stage, "[p]rofessional test drivers test the vehicle according to the methods accepted by the automobile industry."  Isoda Dep. at 28:11-13.[6]  Mr. Isoda also testified that at the time the

_____

[5]  The Plaintiffs cite to several cases in support of the argument that a punitive damages award is appropriate here.  However, these cases, none of which were decided by either the Pennsylvania Supreme Court or the Court of Appeals for the Third Circuit, are not persuasive here.  In Rinker v. Ford Motor Co., 567 S.W.2d 655 (Mo. Ct. App. 1978), the court interpreted Missouri law to conclude that punitive damages may be awarded in a strict liability case where a defendant knew of faults regarding a product but proceeded to place it on the market.  In Romo v. Ford Motor Co., 113 Cal. App. 4th 738 (2003), the court set forth a detailed discussion of the concept of punitive damages, as interpreted by the courts of California.  Finally, in Wangen v. Ford Motor Co., 294 N.W.2d 437 (Wis. 1980), where conduct sufficient to support a punitive damages claim was shown by a defendant's knowledge and intentional ignorance of an alleged design flaw, the court was interpreting the doctrine of punitive damages set forth in Wisconsin.  Here, this Court must apply the law of Pennsylvania in determining whether the allegations and evidence support a claim for punitive damages.  None of the conventional cases offers any guidance for the task at hand.

[6]  The Court notes that this portion of Mr. Isoda's deposition was proffered by the Plaintiffs as an admission by Mitsubishi that the appropriate testing was not conducted on the Montero Sport.

2000 Montero Sport was designed, fishhook tests were not conducted as part of the vehicle testing because the NHTSA protocol concerning those tests had not been made public then. Isoda Dep. at 33:16-18.  Plaintiffs acknowledge that the record presents nothing more on this issue.  Oral Arg. Tr. at 165:3-9.  No reasonable juror could, upon hearing this testimony, conclude that there were, or that Mitsubishi knew of, other industry standards that should have been applied in testing the Montero Sport and ignored such standards with the intent of harming users of its vehicles.

The record presents no dispute of a material fact on the punitive damages issue and is devoid of any evidence from which a reasonable jury could find that Mitsubishi acted with an evil motive or with reckless indifference to the rights of others in designing the 2000 Montero Sport.  Thus, an award of punitive damages is not appropriate in this case, and the motion for partial summary judgment is granted.  An appropriate Order follows.

S/Gene E.K. Pratter
Gene E.K. Pratter
United States District Judge


April 19, 2006

9

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JAMES MONTGOMERY,** | : | **CIVIL ACTION** |
| **JACQUELINE MONTGOMERY** | : | |
| **Plaintiffs,** | : | |
| | : | |
| **vs.** | : | |
| | : | |
| **MITSUBISHI MOTORS CORP.,** | : | |
| **MITSUBISHI MOTOR SALES OF** | : | |
| **AMERICA, INC. and ANNE STORK** | : | |
| **Defendants.** | : | **NO. 04-3234** |

**O R D E R**

AND NOW, this 19th day of April, 2006, upon consideration of the Motion for Partial Summary Judgment of Defendants Mitsubishi Motors Corp. and Mitsubishi Motors North America, Inc. to Dismiss Plaintiffs' Claim for Punitive Damages (Docket No. 40), the response thereto (Docket No. 56), and the reply filed by the Defendants (Docket No. 64), and after oral argument on the Motion, it is **ORDERED** that the Motion is **GRANTED**.  The Clerk of Court is instructed to enter summary judgment in favor of Defendants Mitsubishi Motors Corp. and Mitsubishi Motors North America, Inc. with respect to the issue of punitive damages only.

BY THE COURT:


S/Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge