IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES MONTGOMERY, | : | CIVIL ACTION |
| JACQUELINE MONTGOMERY | : | |
| Plaintiffs, | : | |
| | : | |
| vs. | : | |
| | : | |
| MITSUBISHI MOTORS CORP., | : | |
| MITSUBISHI MOTOR SALES OF | : | |
| AMERICA, INC. and ANNE STORK | : | |
| Defendants. | : | No. 04-3234 |

Gene E.K. Pratter, J.                Memorandum and Order                July 10, 2006

Plaintiffs James and Jacqueline Montgomery move to preclude the testimony of Donald Tandy, an automotive testing expert proffered by the Defendants Mitsubishi Motors Corporation and Mitsubishi Motors North America, Inc. (jointly, "Mitsubishi"),[1] in this case. If permitted to testify, Mr. Tandy will present evidence regarding the engineering stability of the Mitsubishi Montero Sport. For the reasons that follow, the motion to preclude Mr. Tandy's testimony will be denied.

**FACTUAL BACKGROUND**

This action arises out of a fatal auto accident that occurred on July 23, 2002. The Plaintiffs' son, Garrett Montgomery, was a passenger in an MY2000 Mitsubishi Montero Sport when the vehicle was struck by another vehicle driven by Third Party Defendant Anne Stork.

---

[1] Although the case is captioned against Mitsubishi Motors Corp. and Mitsubishi Motor Sales of North America, Inc., the latter organization is now called Mitsubishi Motors North America, Inc.. Answer to Complaint at 1. The proper name of this Defendant, Mitsubishi Motors North America, Inc., shall be used throughout this Memorandum.

The Montero rolled over, and Garrett Montgomery was killed.

The Montgomerys commenced this action with the filing of their Complaint on July 8, 2004, alleging that Mitsubishi caused their son's death by "the design and manufacture of a defective motor vehicle and because of Defendants' negligence, carelessness and reckless disregard for the safety of others." Complaint at ¶ 13. Mitsubishi answered the Complaint on August 19, 2004, asserting various affirmative defenses. The parties conducted discovery, including deposing several expert witnesses. Discovery has been completed. The Montgomerys move for an order excluding the testimony of Donald Tandy, and Mitsubishi has responded to the Motion. Oral argument on the Motion was held, and the Court's findings of fact and conclusions of law follow.

**FINDINGS OF FACT**

1. Donald Tandy is a mechanical engineer holding a both bachelor and master of science degrees in mechanical engineering. D. Tandy Aff. at ¶ 3.[2] Mr. Tandy is a registered engineer in the State of Texas. D. Tandy Aff. at ¶ 3.

2. Mr. Tandy has almost twenty years of engineering experience with respect to the design and handling of motor vehicles, including "design, vehicle dynamics, accident reconstruction and computer simulation." D. Tandy Aff. at ¶ 3. Over the years, Mr. Tandy has held a variety of positions in which he performed such duties as developing steering and handling tests and testing "advanced suspension concepts such as four wheel steer vehicles and cars with active suspension systems." Id.

---

[2] The Court notes that Mr. Tandy did not appear to testify at the argument respecting this Motion. Therefore, much of the information regarding the testing employed by Mr. Tandy is extracted from the affidavit he provided.

3.      Mr. Tandy has worked for and with many of the major automotive manufacturing companies, including Ford, Toyota, Kia, Isuzu, Nissan, Mitsubishi, Hyundai, DaimlerChrysler, General Motors and Land Rover.  D. Tandy Aff. at ¶ 3.  In his capacity working for these companies, Mr. Tandy has conducted various tests, including "on track handling tests" and "ADAMS computer simulations."  Id.

4.      With respect to this case, Mr. Tandy conducted tests on the 2000 Mitsubishi Montero Sport 4X4, the vehicle that was involved in the accident giving rise to this case.  D. Tandy Aff. at ¶ 5.  The tests were designed to evaluate the steering, handling and stability characteristics of the vehicle.  D. Tandy Aff. at ¶ 5.

5.      The tests employed by Mr. Tandy in this case included "a selection of mainstream tests similar to those used by vehicle manufacturers worldwide."  D. Tandy Aff. at ¶ 8.  Included with Mr. Tandy's report is a videotape demonstrating the types of test procedures and protocols that he applied.  D. Tandy Aff. at Ex. A.  In conducting his testing, Mr. Tandy did not attempt to recreate or re-enact the accident that occurred in this case.  Apr. 5 Tr. at 95:2-4.

6.      The specific tests conducted by Mr. Tandy include high and low speed slalom tests, I.S.O. severe lane change maneuvers, SAE J266 constant radius circle turn tests, steering response test, limit turn tests, high speed turn tests, tangent turn tests, braking while turning tests, handling course evaluations and emergency braking tests.  D. Tandy Aff. at ¶ 8.  These types of tests have been used to evaluate a vehicle's handling, stability and resistance to rollover.  See D. Tandy Aff. at ¶ 8; S. Richardson Dep. at 13:14-18, 24-25; 14:1-2, 18-19.

7.      The tests Mr. Tandy employed have been acknowledged by other experts as, in addition to the static stability factor test, standard tests that were available to assess a vehicle's

3

rollover resistance.  See, e.g., Apr. 5 Tr. at 93:15-22; S. Richardson Dep. at 13:14-18, 24-25; 14:1-2, 18-19.  Two additional automotive experts, Robert L. Anderson and David J. Bilek, acknowledge that the testing conducted by Mr. Tandy, such as lane change and slalom tests, are considered to be standard industry tests for motor vehicle handling.  See Mitsubishi Opposition Memorandum at Exs. B, C.[3]

8.      Although the National Highway Traffic Safety Administration ("NHTSA") has analyzed various test modalities that can be applied to predict the propensity of risk that a vehicle might have of rolling over, no regulation defining which tests are best designed for this purpose has been issued.  Apr. 5 Tr. at 86:11-13.

**CONCLUSIONS OF LAW**

9.      Federal Rule of Evidence 702, which governs the admissibility of expert testimony, provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and

---

[3] Mr. Anderson has been proffered as an expert witness on behalf of the Plaintiffs in this case.  Mr. Bilek has not been so proffered; however, Plaintiffs seek to have the Court allow Mr. Anderson to testify on the basis that he (Mr. Anderson) seeks to rely on some testing that Mr. Bilek conducted in another vehicle rollover case involving a different model of the Montero Sport.  The deposition testimony in which these gentlemen acknowledge the standardization of the tests conducted by Mr. Tandy was not taken in the course of this case, but rather in other litigation.  However, that fact is not relevant to this analysis, as the pertinent point here is that these other experts concur that the tests employed by Mr. Tandy are standard, acceptable tests in the automotive industry.  Nor is it troublesome to the Court that neither Mr. Anderson nor Mr. Bilek agree that these tests are good indicators as to whether a vehicle has a propensity to roll over.  As will be discussed infra, this disagreement does not lead the Court to conclude that one expert's opinion is wrong and the other correct.  Rather, the credibility and veracity of these "dueling" expert witnesses is a matter for cross-examination at trial.

methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

FED. R. EVID. 702.

10. In Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), the Supreme Court imposed upon district courts the role of a gatekeeper to "ensure that any and all scientific evidence is not only relevant, but reliable." ID Sec. Sys. Canada, Inc. v. Checkpoint Sys., Inc., 198 F. Supp. 2d 598, 601-02 (E.D. Pa. 2002) (quoting Daubert, 509 U.S. at 589); see also Schneider v. Fried, 320 F.3d 396, 404 (3d Cir. 2003).

11. When "faced with a proffer of expert scientific testimony . . . the trial judge must determine at the outset, pursuant to Rule 104(a), whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand and determine a fact in issue." Id. at 602 (quoting Daubert, 509 U.S. at 592).

12. This gatekeeping function of the district court extends beyond scientific testimony to "testimony based on . . . 'technical' and 'other specialized' knowledge." Id. (quoting Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999)).

13. Federal Rule of Evidence 702, as interpreted in Daubert, provides "three distinct substantive restrictions on the admission of expert testimony: qualifications, reliability and fit." Elcock v. Kmart Corp., 233 F.3d 734, 741 (3d Cir. 2000). The party offering the expert testimony has the burden of establishing that the proffered testimony meets each of the three requirements by a preponderance of the evidence. ID Sec. Sys. Can., Inc., 198 F. Supp. 2d at 602 (citing Padillas v. Stork-Gamco, Inc., 186 F.3d 412, 418 (3d Cir. 1999)).

**Qualifications of Mr. Tandy**

14.     The first aspect of a Daubert analysis, whether the witness is qualified as an expert, requires a witness to have "specialized knowledge" about the area of the proposed testimony. Elcock v. Kmart Corp., 233 F3d 734, 741 (3d Cir. 2000). The basis of such knowledge may include "practical experience as well as academic training and credentials." Id. This requirement has been interpreted liberally to encompass "a broad range of knowledge, skills, and training." Id. (quoting Waldorf v. Shuta, 142 F.3d 601 (3d Cir. 1998)).

15.     The Montgomerys do not challenge Mr. Tandy's qualifications to testify as an expert, but rather whether the tests he conducted are relevant to this case. Therefore, the Court need not address the propriety of Mr. Tandy's expert qualifications.

**Reliability of Mr. Tandy's Opinions**

16.     The second Daubert prong requires an expert's testimony to be reliable. Id. When an expert testifies to "scientific knowledge," the expert's opinions "must be based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation'; the expert must have 'good grounds' for his or her belief." In re Paoli Railroad Yard Litigation, 35 F.3d 717, 743 (3d Cir. 1994). The Supreme Court has noted that a district court "must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." Id. (citing Kumho Tire, 526 U.S. 137 (1999)). That is to say, a trial court should consider the specific factors identified in Daubert where they are "reasonable measures of the reliability of expert testimony." Kumho Tire, 526 U.S. at 152.

17.     In considering whether there are "good grounds" for an expert's opinions,

and, therefore, whether the opinion meets the reliability requirement, district courts are advised to look at a series of factors, including:

> (1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put.

In re Paoli, 35 F.3d at 742 n.8. This list of factors "is non-exclusive and . . . each factor need not be applied in every case." Elcock, 233 F.3d at 746.[4]

18.     The Montgomerys argue that Mr. Tandy's report and opinion testimony must be excluded because the testing he conducted is not an accepted modality for testing a vehicle to its limit performance. Memorandum Supporting Motion to Exclude Mr. Tandy at 9. The Montgomerys specifically assert that the tests Mr. Tandy employed are "sub-limit" handling maneuvers that do not serve to evaluate the stability and/or rollover propensity of the Montero Sport's overturn limit response. Id. Therefore, the Montgomerys assert that Mr. Tandy's conclusions with respect to the capabilities and handling of the Montero Sport are not relevant to the issue presented here – whether the Montero Sport is defective because it is apt to roll over on dry level ground. Id. at 10.

19.     The Court is not persuaded that the tests conducted by Mr. Tandy are irrelevant to

---

[4] Nonetheless, to the extent the Daubert factors are "reasonable measures of the reliability" of an expert's testimony, they should be considered by the district court. Elcock v. Kmart Corp., 233 F.3d 734, 746 (3d Cir. 2000).

the issue of whether the Montero Sport harbors a defect in its design. The evidence presented by affidavit and deposition, along with the argument presented by counsel, lead to the conclusion that the tests Mr. Tandy conducted were, in fact, tests that vehicle manufacturers have conducted in assessing vehicle stability. As counsel for Mitsubishi pointed out, one of the Plaintiffs' own experts has agreed that some of the tests Mr. Tandy performed are, in fact, standard tests performed to assess vehicle stability. Although the deposition testimony of Messrs. Anderson and Bilek suggests that there is some disagreement among experts as to how valuable the tests are in predicting the likelihood of a rollover accident, it is not the role of this Court to determine which expert's opinion is correct. Rather, the Court must consider whether the purported expert testimony has been subject to peer review and is a generally accepted and testable methodology. Based on the testimony and argument presented, the Court concludes that the methodology applied by Mr. Tandy is sufficiently sound and is, at least according to some, relevant to the issue of the propensity of a vehicle to rollover. For this reason, the Montgomerys' argument respecting the relevance of the expert report and opinion testimony is not persuasive.

20.     The Montgomerys next argue that Mr. Tandy's expert report and opinion testimony must be excluded because the testing that was conducted was not substantially similar to the circumstances and conditions present in this case. <u>Memorandum Supporting Motion to Exclude Mr. Tandy</u> at 11. The Montgomerys specifically argue that the tests conducted are unrelated to the facts surrounding this particular rollover crash and, therefore, offer no substantial similarity to this case. <u>Id</u>.

21.     When a party attempts to introduce videotapes of experiments or demonstrations that purport to replicate the actual events of an accident, the evidence is admissible if it is

relevant and probative, as long as the experiment or demonstration was conducted under substantially similar circumstances as the actual event. Glick v. White Motor Co., 458 F.2d 1287, 1294 (3d Cir. 1972); Russo v. Mazda Motor Corp., No. 89-7995, 1992 WL 309630 at * 2 (E.D. Pa. Oct. 19, 1992). However, where a party seeks to introduce "photographs, films, and videotapes of experiments or demonstrations, not as a re-creation or representation of how an accident actually happened, but instead to illustrate general principles of physics, for example" the substantial similarity requirement does not apply. Russo, 1992 WL 309630 at * 2 (citing 2 McCormick on Evidence at § 214).

      22.     In this case, all of the testing conducted by Mr. Tandy with respect to the Montero Sport was completed to assess the stability of that particular model of the vehicle. At oral argument, counsel for Mitsubishi stated that Mr. Tandy did not conduct his testing for the purpose of recreating or re-enacting the accident that occurred here. As discussed above, the value of such testing may well be a proper topic for cross-examination by the Montgomerys' counsel at trial. However, under these circumstances, the substantial similarity doctrine does not apply.

**Assistance to the Jury**

      23.     The final prong of the Daubert analysis requires that the expert testimony "fit" by assisting the trier of fact. Oddi v. Ford Motor Co., 234 F.3d 136, 145 (3d Cir. 2000). "Admissibility thus depends in part upon 'the proffered connection between the scientific research or test result to be presented and particular disputed factual issues in the case.'" In re Paoli, 35 F.3d at 743. The "fit" standard does not require plaintiffs to prove "their case twice." Oddi, 234 F.3d at 145. They need not "demonstrate to the judge by a preponderance of evidence

9

that the assessments of their experts are correct, they only have to demonstrate by a preponderance of evidence that they are reliable." In re Paoli, 35 F.3d at 744.  Thus, the test does not require that the opinion have "the best foundation" or be "demonstrably correct," but only that the "particular opinion is based on valid reasoning and reliable methodology." Oddi, 234 F.2d at 146.  In assessing "fit," a court must "examine the expert's conclusions in order to determine whether they could reliably flow from the facts known to the expert and the methodology used." Id.

24. The Montgomerys argue that the probative value of any evidence proposed to be presented by Mr. Tandy is outweighed by the prejudicial effect it will likely have because the testing will serve to confuse the issues and mislead the jury. Memorandum Supporting Motion to Exclude Mr. Tandy at 13.  The Montgomerys argue that by lending an "aura of scientific validity or reliability where none exists," the admission of any of Mr. Tandy's testimony both would visit unfair prejudice upon the Plaintiffs and mislead the jury. Id.

25. As discussed above, the Court is not persuaded that the testing conducted by Mr. Tandy is unacceptable in these circumstances.  The tests conducted by Mr. Tandy have been utilized by others in the automotive industry to assess the handling capabilities of various vehicles and, while there may be clear differences of opinion between and among experts, it is not the Court's role to decide which expert is correct.  Based on the argument presented by counsel and the various affidavits submitted with respect to this motion, the Court is convinced only that reasonable minds can – and apparently do – differ with respect to the utility and importance of the tests employed by Mr. Tandy.  This material, along with the presentation of testing presented by other experts, will serve to assist the jury in assessing complicated and

complex information regarding the performance of motor vehicles. The Court is confident that a reasonable jury will be able to listen to and assess the arguments presented by both sides in this case, and that the able legal counsel representing each side will adequately explain the concerns that must be weighed. Thus, the Montgomerys' argument with respect to unfair prejudice is unfounded.

**CONCLUSION**

For the reasons discussed above, the Montgomerys' Motion to Exclude the Testimony of Donald Tandy will be denied. An appropriate Order follows.

S/Gene E.K. Pratter<br>
Gene E.K. Pratter<br>
United States District Judge

July 10, 2006

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JAMES MONTGOMERY,** | : | **CIVIL ACTION** |
| **JACQUELINE MONTGOMERY** | : | |
| **Plaintiffs,** | : | |
| | : | |
| vs. | : | |
| | : | |
| **MITSUBISHI MOTORS CORP.,** | : | |
| **MITSUBISHI MOTOR SALES OF** | : | |
| **AMERICA, INC. and ANNE STORK** | : | |
| **Defendants.** | : | **NO. 04-3234** |

**O R D E R**

**AND NOW**, this 10th day of July, 2006, upon consideration of Plaintiffs' <u>Daubert</u> Motion to Exclude Testimony of Mitsubishi's Expert Witness Tandy (Docket No. 39, 46), the responses thereto (Docket Nos. 58, 70, 76, 80), it is **ORDERED** that the Motion is **DENIED**.

BY THE COURT:


S/Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge